Bernard Weinreb, Esq. (BW 3846)
Attorney for Plaintiff
2 Executive Boulevard
Suffern, New York 10901
(845)369-1019

ECF CASE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NIGEL MURRAY
      Plaintiff,

      -against-

ORANGE COUNTY
IRONWORKS, INC. and
ORANGE COUNTY CHOPPERS, INC.
      Defendants.
-----------------------------------------------------------X

Civil Action No.

**ROBINSON**

**COMPLAINT**

**05 CIV. 746**

## I. PRELIMINARY STATEMENT

1. This is an action brought by Plaintiff, NIGEL MURRAY, to remedy discrimination on the basis of race in the terms, conditions and privileges of employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq. ("Title VII") and the New York Human Rights Law, N.Y. Exec. L. Sections 290-301 ("N.Y. Human Rights Law").

## II. JURISDICTION

2. The jurisdiction of the Court to adjudicate plaintiff's first claim is invoked pursuant to 28 U.S.C. Section 1331 and Section 706(f)(3) of Title VII, 42 U.S.C. Section 2000e-5(f)(3), this being a suit authorized and instituted pursuant to Title VII.

3. The jurisdiction of the Court to adjudicate plaintiff's second claim is invoked pursuant to 28 U.S.C. Section 1367(a), as it is so related to plaintiff's first claim that it forms a part of the same case or controversy.

4. The Plaintiff requests the Court to exercise jurisdiction under his pendant state claim.

5. Plaintiff has complied fully with all prerequisites to jurisdiction in the Court under Title VII and the N.Y. Human Rights Law.

6. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to Title VII and the N.Y. Human Rights Law.

### III. VENUE

7. The unlawful employment practices alleged below were committed within the State of New York in Dutchess County. Accordingly, venue lies in the United States District Court for the Southern District of New York under 28 U.S.C. Section 1391(b) and 42 U.S.C. Section 2000e-5(f)(3).

### IV. PARTIES

8. Plaintiff, Nigel Murray, resides in Orange County, New York. He is an "employee" as defined by 42 U.S.C. Section 2000e(f) and Section 296(6) of the N.Y. Human Rights Law, N.Y. Exec. Law Section 296(6).

9. Each of the defendants, Orange County Ironworks, Inc. ("Ironworks") and Orange County Choppers, Inc. ("Choppers")(hereinafter, Ironworks and Choppers will be collectively referred to as the "Employer") was an "employer" as defined by Section 701(b) of Title VII, 42 U.S.C. Section 2000e(b), and Section 292(5) of the N.Y. Human Rights Law, N.Y. Exec. Law Section 292(5). Each Employer employed more than 15 employees at all times relevant to this action.

### V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff timely filed a charge of discrimination against defendant with the New York State Division on Human Rights ("SDHR") and the United States Equal Opportunity Commission ("EEOC") on or about April 1, 2004 complaining of the discrimination on the basis of her race, as alleged herein. On or about November 18,

2004, the EEOC issued a right to sue letter to Plaintiff, informing him of his right to sue in federal court. Shortly thereafter, the SDHR dismissed the case for administrative convenience.

## VI. STATEMENT OF FACTS

12. The Defendants, Ironworks, Inc. ("Ironworks"), is owned by Paul Tueler, Sr. Mr. Tueler also owns Choppers. Both Ironworks and Choppers are located at 27 Stone Castle Road, Rock Tavern, NY.

13. Plaintiff worked for Ironworks from approximately 1998 to approximately October 2003. After Plaintiff got fired from Ironworks, Mr. Tueler gave Plaintiff a job at Choppers at which Plaintiff worked from approximately October 2003 to February 2004. Plaintiff's work performance at both of these entities was satisfactory.

14. Plaintiff was wrongfully fired twice from Ironworks (in the Summer of 2002 and in October 2003) and once from Choppers (February 2004). Upon information and belief, Plaintiff was fired because of his race.

15. Steve (last name unknown) fired Plaintiff in the summer of 2002 after he asked Plaintiff to lift up a very heavy iron that Plaintiff could not lift. (Plaintiff believes that at least three or four people would have been needed to lift that iron.) Although Plaintiff explained to Steve that Plaintiff tried to lift it but it was too heavy for him, Steve fired Plaintiff.

16. Upon information and belief, Steve knew that Plaintiff could not possibly lift that iron by himself. The only reason he made Plaintiff do that was to have an excuse to fire Plaintiff on account of his race.

17. The day that Plaintiff was fired by Steve, Mr. Tueler called Plaintiff from out of town and rehired him. Mr. Tueler told Plaintiff to return to work in a week, when Mr. Tueler will be returning from out of town. One week later, Plaintiff returned to work. Mr. Tueler paid Plaintiff for the week he missed.

18. Plaintiff's foreman at Ironworks, Amos (last name unknown), always gave Plaintiff a hard time for no reason. On one occasion, Amos dropped a heavy beam on Plaintiff's foot injuring it. Plaintiff was out for one month on account of this injury.

Amos laughed about this incident with Plaintiff's supervisor, Perroni, and with Plaitniff's co-worker Miguel.

19. Throughout Plaintiff's employment at Ironworks, Perroni yelled, cursed and acted abusively towards Plaintiff. Upon information and belief, Perroni did not treat other employees in this way.

20 Perroni called Plaintiff a "Black Gorilla" and "nigger" on many occasions throughout Plaintiff's employment at Ironworks. Although Plaintiff complained about this to Paul Tueler, Jr., Mr. Tueler's son (hereinafter referred to as "Jr.") who was also an officer at Ironworks, Jr. did nothing to correct the problem. He just shrugged it off by saying that this was Perroni's nature.

21. Plaintiff was falsely accused of stealing by his supervisors, with no basis, on many occasions. These accusations were followed by an apology. Whereas the accusations were made in front of Plaintiff's co-workers, the apologies were made in private. Plaintiff complained to Jr. about these false accusations, but no effective action was taken to correct this problem, as these false accusations kept on coming.

22. The second time Plaintiff was fired occurred in October 2003. Plaintiff told Perroni on a Thursday that he wanted to take the day off on a Saturday so that he can celebrate his anniversary in New York City. Plaintiff was entitled to take days off as he had vacation coming to him. The next day, Perroni made sure to give Plaintiff an extremely heavy workload which could not possibly be finished in a day. Although Plaintiff had been in at work at 5:30 a.m., Plaintiff could not complete the work. Plaintiff did not come in to work on Saturday, as he had scheduled it as a day off in advance. When Plaintiff came in to work on the following Monday, he was fired.

23. Perroni set Plaintiff up to be fired by giving him the unusually heavy workload.

24. Plaintiff spoke to Mr. Tueler about one week later. Mr. Tueler gave Plaintiff a position at his sister company, Choppers.

25. Plaintiff's supervisor at Choppers was Ronnie (last name unknown). Ronnie was good friends with Perroni and Amos.

26. Plaintiff heard Ronnie say that he does not like to work with black people.

27. Ronnie made Plaintiff drive a truck that did not have inspection. Plaintiff complained to Ronnie about this and Ronnie commented that he did not know that the inspection had expired. Plaintiff believes that Ronnie lied to him since Plaintiff heard Ronnie laugh about this incident to other employees at Choppers.

28. In or about January 2004 Ronnie falsely accused Plaintiff of stealing $27 of gas money.

29. Right before the holiday season in December 2003, Ronnie drastically cut Plaintiff's work hours.

30. On or about February 3, 2004, Ronnie fired Plaintiff and replaced him with his friend, Tom (who is white). Ronnie fired Plaintiff for no reason.

31. Plaintiff was not paid for many of his hours he worked at Choppers.

32. Besides himself, Plaintiff is aware of only one other black employee who had worked at Ironworks or Choppers while he was employed by these entities. The other black lasted only a short time at the job.

33. Upon information and belief, the Employer, by wrongfully firing Plaintiff, cutting his hours, treating him abusively, uttering racist slurs and cursing Plaintiff, and otherwise subjecting Plaintiff to a hostile work environment, has discriminated against Plaintiff on the basis of his race.

## VII. AS AND FOR A FIRST CLAIM FOR RELIEF
### TITLE VII

34  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33 as is set forth fully herein.

35  Upon information and belief, the Employer wrongfully terminated Plaintiff from his employment and otherwise discriminated against him on the basis of his race, in violation of Title VII.

## VIII. AS AND FOR A SECOND CLAIM FOR RELIEF
### NEW YORK HUMAN RIGHTS LAW

36  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 35 as is set forth fully herein.

37. Upon information and belief, the Employer wrongfully terminated Plaintiff from his employment and otherwise discriminated against him on the basis of his race, in violation of the N.Y. Human Rights Law.

### IX. AS AND FOR A THIRD CLAIM FOR RELIEF- FAILURE TO PAY MINIMUM WAGE/FLSA

38  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 37 as is set forth fully herein.

39. Plaintiff was not paid for many of the hours he worked at Choppers.

40. Plaintiff complained to the Employer about not being paid for such hours.

41. By failing to pay Plaintiff, for all his hours of employment, the Employer violated the minimum wage provisions under Section 206 of the FLSA.

42. The Employer's failure to compensate Plaintiff in accordance with the provisions of the FLSA was willful.

### X. AS AND FOR A FOURTH CLAIM FOR RELIEF- FAILURE TO PAY OVERTIME WAGE/FLSA

43  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 as is set forth fully herein.

44. Plaintiff was not paid time and a half for several of the overtime hours (hours worked in excess of 40 hours per week) he worked at Choppers.

45. By failing to pay Plaintiff for all his overtime hours of employment, the Employer violated the overtime wage provisions under the FLSA.

46. The Employer's failure to compensate Plaintiff in accordance with the provisions of the FLSA was willful.

### XI. AS AND FOR A FIFTH CLAIM FOR RELIEF- FAILURE TO PAY MINIMUM WAGE/NY LABOR LAW

47  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 as is set forth fully herein.

48. Plaintiff was not paid for many of the hours he worked at Choppers.

49. Plaintiff complained to the Employer about not being paid for such hours.

50. By failing to pay Plaintiff, for all his hours of employment, the Employer violated the minimum wage provisions under the New York Labor Law.

51. The Employer's failure to compensate Plaintiff in accordance with the provisions of the New York Labor Law was willful.

## XII. AS AND FOR A SIXTH CLAIM FOR RELIEF-<br>FAILURE TO PAY OVERTIME WAGE/NY LABOR LAW

52 Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51 as is set forth fully herein.

53. Plaintiff was not paid time and a half for several of the overtime hours (hours worked in excess of 40 hours per week) he worked at Choppers.

54. By failing to pay Plaintiff for all his overtime hours of employment, the Employer violated the overtime wage provisions under the New York Labor Law.

55. The Employer's failure to compensate Plaintiff in accordance with the provisions of the New York Labor Law was willful.

## XIII. AS AND FOR A SEVENTH CLAIM FOR RELIEF<br>(SECTION 198 OF NEW YORK LABOR LAW)

56. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 55 of the Complaint as if set forth fully herein.

57. The Employer willfully did not pay Plaintiff the wages and overtime pay due him, as described above in this Complaint, in violation of Article 6, Sections 190, et. seq. of the New York Labor Law and/or Article 6, Section 191 of the New York Labor Law.

58. The Employer willfully did not pay Plaintiffs the pay due to him, as described above in this Complaint, in violation of Article 6, Sections 190, et. seq. of the New York Labor Law and/or Article 6, Section 191 of the New York Labor Law.

59. As a result of the willful withholding of pay described in this Cause of Action, Plaintiffs are entitled to recover liquidated damages and costs pursuant to Section 198 of the New York Labor Law.

60. As a result of the withholding of pay described in this Cause of Action, Plaintiff is entitled to recover attorney's fees pursuant to Section 198 of the New York Labor Law.

### XIV. PRAYER FOR RELIEF

Plaintiff respectfully requests this Court to:

1. Assume jurisdiction over this action;

2. Grant a permanent injunction:

   A. Prohibiting defendants from continuing or maintaining a policy, practice and/or custom of denying, abridging, withholding or conditioning the rights of employees on the basis of race which rights are secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e et seq., and/or the N.Y. Human Rights Law, N.Y. Exec. Law Section 290-301.

3. Reinstate plaintiff to his position at the Employer, or award front pay; and

4. Award plaintiff the following damages:

### ON THE FIRST CLAIM FOR RELIEF

A. Actual damages for loss of wages and benefits, in an amount to be determined at trial, plus interest;

B. Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish and emotional distress sustained by her;

C. Punitive damages, in an amount to be determined at trial;

D. Reasonable attorneys' fees.

### ON THE SECOND CLAIM FOR RELIEF

A. Actual damages for loss of wages and benefits, in an amount to be determined at trial, plus interest; and

B. Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish and emotional distress sustained by him.

### ON THE THIRD CLAIM FOR RELIEF

A. Actual damages for loss of wages, in an amount to be determined at trial, plus interest;

B. Liquidated damages equal to the amount of actual damages.

C. Reasonable attorneys' fees.

### ON THE FOURTH CAUSE OF ACTION

A. Actual damages for loss of wages, in an amount to be determined at trial, plus interest;

B. Liquidated damages equal to the amount of actual damages.

C. Reasonable attorneys' fees.

### ON THE FIFTH CAUSE OF ACTION

A. Actual damages for loss of wages, in an amount to be determined at trial, plus interest;

D. Liquidated damages equal to the amount of actual damages.

E. Reasonable attorneys' fees.

### ON ALL CLAIMS

A. The costs of this action.

5. Grant plaintiff such other and further relief as may be deemed necessary, just and proper by this Court.

### XV. JURY DEMAND

Plaintiff demands trial by jury on all issues in this action properly triable before a jury.

Dated:   Suffern, New York
         January 17, 2005

*Bernard Weinreb*
Bernard Weinreb, Esq. (BW 3846)
Attorney for Plaintiff
2 Executive Blvd., Suite 201
Suffern, New York 10901
(845)369-1019

To:
Mr. Paul Tueler, Sr.
President
Orange County Choppers, Inc. and
Orange County Ironworks, Inc.
27 Stone Castle Road
Rock Tavern, NY 12575